```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

MARCO ISLAND CABLE, INC. a Florida
corporation,

                Plaintiff,

vs.                                      Case No.   2:04-cv-26-FtM-29DNF

COMCAST CABLEVISION OF THE SOUTH,
INC., a Colorado corporation,
COMCAST CORPORATION, a Pennsylvania
corporation,

                Defendants.
_____/

**OPINION AND ORDER**

     This matter comes before the Court on defendant Comcast Cablevision of the South, Inc.'s Dispositive Motion for Partial Summary Judgment as to Plaintiff Marco Island Cable's Inability to Offer Cable Services Outside Marco Island (Doc. #97), filed on July 28, 2005. Plaintiff Marco Island Cable, Inc. (plaintiff or Marco Island Cable) filed its Response (Doc. #110) on September 21, 2005. With the permission of the Court, Comcast Cablevision of the South, Inc. (defendant or Comcast) filed a Reply on October 3, 2005. (Doc. #120). The parties also filed exhibits and affidavits in support of their respective briefs, and defendant filed a request for oral argument on October 4, 2005. (Doc. #122). Plaintiff filed a Response to Comcast's Request for Oral Hearing, With Request that the Court Strike Comcast's Reply as Improper and

Permit MIC an Opportunity to File Sur-Reply on October 6, 2005. (Doc. # 123). Defendant filed a Response to plaintiff's three-part response/motion on October 7, 2005. (Doc. #124).

## I.

Finding that the parties have fully briefed the issues on the motion for partial summary judgment, the Court concludes that oral argument is not necessary. Defendant's Request for Oral Argument (Doc. #122) will be denied. Having reviewed the legal memoranda and submitted documents, the Court finds that there is no reason to strike the Reply. Plaintiff's Request that the Court Strike Comcast's Reply (Doc. #123) will be denied. The Court finds that the record as presented is sufficient and a sur-reply is not required. Plaintiff's Request for Leave to File Sur-Reply (Doc. #123) will be denied.

## II.

Defendant Comcast essentially asserts that Marco Island Cable lacks standing to bring antitrust claims relating to the geographic areas outside the City of Marco Island. "Plaintiff's claimed injury as to any geographic area other than the City of Marco Island is precluded as a matter of law because Plaintiff lacks any franchise, permit or other legal right to expand its cable television business outside the City of Marco Island. Because it cannot legally expand its cable business, Plaintiff cannot have suffered injury or threat of injury recognizable at law." (Doc.

#97, p. 2). Additionally, defendant asserts that plaintiff cannot show "but for" causation attributable to defendant. (Doc. #97, p. 8). Plaintiff disputes these assertions, as will be discussed in more detail below.

**A.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury or the factfinder at trial could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's

case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

**B.**

This lawsuit arises from events in Collier County, Florida. Collier County includes Marco Island, an island south of Naples, Florida consisting of the incorporated City of Marco Island and an unincorporated "Goodland" area. The two other incorporated areas of Collier County are Everglades City and the City of Naples. The other unincorporated areas of Collier County include: Chokoloskee, East Naples, Golden Gate, Immokalee, Lely Resort, Lely, Naples Manor, Naples Park, Orangetree, Pelican Bay, Pine Ridge, Plantation Island, and Vineyards. (See Doc. #97, Exh. B).

In June, 1997, Marco Island Cable and Collier County entered into a Cable Television Franchise (the Franchise Agreement) (Doc. #97-3, Exhibit A). The Franchise Agreement granted Marco Island Cable "the authority to construct, maintain and operate a Cable System, utilizing the Public Rights-Of-Way, to offer Cable Services and Other Communications Services within the County" pursuant and

subject to the conditions and requirements of Chapter 30 of the Collier County Code and applicable federal, state and local laws, rules and conditions. (Id., § 40). A "Cable System" did not include "a facility that serves subscribers without using any public right-of-way." (Id., § 2.7(b)). The franchise was limited to "that geographical area bounded by Marco Island within the unincorporated limits of the County as of the date of acceptance of this Franchise." (Id., § 2.17). "The cable television franchise granted pursuant to this Agreement shall be limited to the geographic area of the Marco Island Florida to be served by the franchise Grantee, and the specific public ways necessary to serve such areas." (Id., § 3.1). The franchise "shall run for a term of seven (7) years commencing upon acceptance by the grantee." (Id., § 4.3). The Franchise Agreement became effective on June 24, 1997.

The City of Marco Island was thereafter incorporated. Effective January 19, 1999, Collier County assigned to the City of Marco Island that part of the original franchised area which was now within the City of Marco Island. (Doc. #97-7, Exhibit 3). The City of Marco Island thereby "stands in the shoes of the County as to all geographic areas within the City's municipal boundaries to which the original Franchise Agreement now applies .... This assignment does not affect any geographic area except as specified herein." (Id.).

There was subsequent confusion as to the termination date of the Franchise Agreement with Collier County and the franchise agreement with the City of Marco Island.  Collier County officials now agree that the county Franchise Agreement expires on June 24, 2012 (Doc. #110-10); City of Marco Island officials agree that the City's franchise agreement expires on June 24, 2012. (Id.).  Thus, as of the filing of the Complaint, plaintiff held two non-exclusive cable television franchise agreements, one from Collier County for the unincorporated area of Marco Island, and the second from the City of Marco Island for the incorporated area.  Accordingly, plaintiff's franchises for cable television service included, but were limited to, all the areas within the geographic boundary of Marco Island.  Plaintiff provides cable television services to approximately 8,500 residential units.  Plaintiff distributes cable to Marco Island through traditional cable[1].  Plaintiff also provides cable services through microwave technology[2] to a gated community in the Isles of Capri located two miles north of the Marco Island Bridge on State Road 951.

---

[1] "'Traditional' or 'franchise' cable systems use large remote antennas to capture television signals.  The signals are distributed from the large antennas to viewers through coaxial cable laid under city streets or along telephone lines."  New York State Comm'n on Cable Television v. Federal Communications Comm'n, 749 F.2d 804, 806 (D.C. Cir. 1984).

[2] For an explanation as to the distribution of cable television with microwave technology, see Eastern Microwave, Inc. v. Doubleday Sports, Inc., 691 F.2d 125, 128 (2d Cir. 1982) and New York State Commission on Cable Television, 749 F.2d at 806.

Defendant provides cable television services throughout Collier County, Florida to over 120,000 residential units. Plaintiff contends that defendant has a virtual monopoly on cable services for the vast majority of Collier County, and that defendant protects its monopoly power through (1) predatory pricing; (2) long-term exclusive contracts with residents, associations or developers designed to prevent homeowners and condominium owners from choosing their own cable provider; (3) intimidation; (4) threats to remove cable wiring; and (5) threats to sue customers if they choose to get cable from Marco Island Cable. Plaintiff claims that defendant's actions are unlawful and have prevented it from offering cable in certain parts of Collier County. The three-count Complaint alleges the following state-law causes of action: (1) violation of Florida's Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.211; (2) declaratory relief pursuant to FLA. STAT. §§ 86.011 *et seq.* to have the Court declare that all exclusive contracts for providing cable services to residents of Collier County entered into by Comcast are null and void; and (3) violation of Florida's Antitrust Statute, FLA. STAT. § 542.19.

### C.

It is well established that '[t]he question of standing is one of law." Todorov v. DCH Healthcare Auth., 921 F.2d 1438, 1448

(11th Cir. 1991).³  "A private plaintiff seeking damages under the antitrust laws must establish standing to sue." Florida Seed Co., Inc. v. Monsanto Co., 105 F.3d 1372, 1374 (11th Cir. 1997). "Antitrust standing requires more than the 'injury in fact' and the 'case or controversy' required by Article III of the Constitution." Id. (citing Todorov, 921 F.2d at 1448).  Rather, the doctrine of antitrust standing reflects prudential concerns and is designed to avoid burdening the courts with speculative or remote claims. Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 545 (1983); see also Todorov, 921 F.2d at 1448 ("Antitrust standing is best understood in a general sense as a search for the proper plaintiff to enforce the antitrust laws.").

The Eleventh Circuit follows a two-pronged approach in deciding whether a plaintiff has antitrust standing. Florida Seed Co., 105 F.3d at 1374 (citing Municipal Utils. Bd. of Albertville v. Alabama Power Co., 934 F.2d 1493, 1499 (11th Cir.1991)).  First, the plaintiff must establish that it has suffered "antitrust injury." Municipal Utils. Bd. of Albertville, 934 F.2d at 1499. As the Supreme Court has made clear, to have standing antitrust plaintiffs "must prove more than injury casually linked to an

---

³Florida courts have adopted the body of federal law interpreting the Sherman Antitrust Act to interpret Florida state antitrust claims. Hager v. Venice Hosp., Inc., 944 F. Supp. 1530, 1537 (M.D. Fla. 1996) (citing Fla. Stat. § 542.32).

-8-

illegal presence in the market [i.e., but for causation]. Plaintiffs must prove antitrust injury, which is to say injury of the type that the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977).

Second, the plaintiff must establish that it is an efficient enforcer of the antitrust laws. Municipal Utils. Bd. of Albertville, 934 F.2d at 1499. This determination is predicated on the "target area test." Austin v. Blue Cross & Blue Shield of Ala., 903 F.2d 1385, 1388 (11th Cir.1990). The target area test requires that an antitrust plaintiff both "prove that he is within that sector of the economy endangered by a breakdown of competitive conditions in a particular industry" and that he is "the target against which anticompetitive activity is directed." National Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co., 748 F.2d 602, 608 (11th Cir. 1984), cert. denied sub nom., Patterson v. Buena Vista Distribution Co., 474 U.S. 1013 (1985). Basically, a plaintiff must show that it is a customer or competitor in the relevant antitrust market. Associated Gen. Contractors, 459 U.S. at 539.

**D.**

Federal law establishes a national policy concerning cable communications, franchise procedures and standards, and guidelines

for the exercise of Federal, State and local authority with respect to the regulation of cable systems.  47 U.S.C. § 521(1)-(3).  State and local governments are authorized to exercise jurisdiction with regard to cable services so long as it is consistent with federal law[4].  47 U.S.C. § 556(b).  However, any provision of any State or political subdivision or agency of a state, or franchising authority, or franchising agreement which is inconsistent with the Cable Act is deemed to be preempted and superceded.  47 U.S.C. § 556(c).

The Cable Act provides, with certain exceptions not applicable to this case, that "a cable operator[5] may not provide cable service[6] without a franchise[7]."  47 U.S.C. § 541(b)(1).  Such a

---

[4]The Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521, *et seq.*, (the Cable Act).

[5]A "cable operator" is defined as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system[.]"  47 U.S.C. § 522(5).

[6]A "cable service" is defined as "(A) the one-way transmission to subscribers of (I) video programming, or (ii) other programming service, and (B) subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service[.]"  47 U.S.C. § 522(6).

[7]A "franchise" is defined as "an initial authorization, or renewal thereof (including a renewal of an authorization which has been granted subject to section 546 of this title), issued by a franchising authority, whether such authorization is designated as a franchise, permit, license, resolution, contract, certificate, agreement, or otherwise, which authorizes the construction or operation of a cable system[.]"  47 U.S.C. § 522(9).

franchise may be issued by a "franchising authority," which is defined as "any governmental entity empowered by Federal, State, or local law to grant a franchise." 47 U.S.C. § 522(10). "[A] franchising authority may award ... 1 or more franchises within its jurisdiction ...[,]" 47 U.S.C. § 541(a)(1), and the franchise is construed to authorize "the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system[8] and which have been dedicated for compatible uses ...[,]" 47 U.S.C. § 541(a)(2).

---

[8]A "cable system" is defined as follows:

> [A] facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community, but such term does not include (A) a facility that serves only to retransmit the television signals of 1 or more television broadcast stations; (B) a facility that serves subscribers without using any public right-of-way; (C) a facility of a common carrier which is subject, in whole or in part, to the provisions of subchapter II of this chapter, except that such facility shall be considered a cable system (other than for purposes of section 541(c) of this title) to the extent such facility is used in the transmission of video programming directly to subscribers, unless the extent of such use is solely to provide interactive on-demand services; (D) an open video system that complies with section 573 of this title; or (E) any facilities of any electric utility used solely for operating its electric utility system[.]

47 U.S.C. § 522(7).

Under Florida law, both counties and municipalities are authorized to issue cable franchises. FLA. STAT. § 166.046. Section 166.046(1), Florida Statutes, governs the definitions[9] and minimum standards for cable television franchises which are imposed upon counties and municipalities. Among other things, a county or municipality is required to consider certain specific factors at a duly noticed public hearing before granting a franchise for cable service. FLA. STAT. § 166.046(2).

In Collier County, an ordinance requires that a person desiring to install and/or operate any cable television system in the unincorporated area of the county shall apply for a franchise from the County Board of Commissioners. Collier County, Fla. Ordinance to Regulate Cable Television Franchises Ordinance No. 96-15, § 1(a) (Mar. 26, 1996). The franchise may authorize the franchisee to engage in the business of operating and providing a cable television system in all or a portion of the county. Id., § 1(I). After receiving a franchise, the franchisee must apply to the county for a permit before installing, constructing, maintaining, or operating a cable television system. Id., § 1(a)(2).

The City of Naples also requires that a person obtain a franchise from the City Council before constructing, operating,

---

[9]This provision tracks the language that is used in the Cable Act when defining the terms "cable service", "cable system" and "franchise".

maintaining, or continuing to operate or maintain a communications system which occupies any part of the city's streets. NAPLES, FLA., ORDINANCES ch. 22, art. 1, §§ 22-2 and 22-3 (1994). Similarly, a cable operator would need to apply to the appropriate municipal government agency for authority to provide cable services to the City of Marco Island. See MARCO ISLAND, FLA., ORDINANCE NO. 98-11, § III (1998).

**E.**

Comcast asserts that to serve Naples, plaintiff would have to lay cable from Marco Island through unincorporated Collier County and within the City of Naples. Comcast further argues that, without a franchise allowing plaintiff to distribute cable television via traditional cable in these areas, plaintiff cannot be considered a competitor to Comcast. Lacking competitor status, plaintiff cannot be an efficient enforcer, and therefore, plaintiff lacks standing for its claims in the geographic areas located off of Marco Island.

To be a competitor in the areas located beyond the geographic boundaries of Marco Island, a cable operator must have a franchise to provide cable services to those areas. It is undisputed that Marco Island Cable's franchise agreement with Collier County covers only the unincorporated area of Marco Island, and Marco Island Cable's franchise agreement with the City of Marco Island includes only the City of Marco Island. The record further reflects that

plaintiff does not have a franchise agreement for any other portion of Collier County. Plaintiff has not applied to the proper franchising authorities for a franchise to expand its cable operations into areas outside the geographic boundaries of Marco Island. In the absence of any other franchise from Collier County or a franchise from the municipal government of the City of Naples, plaintiff is not authorized to offer cable services through traditional cable to areas located off of Marco Island. Therefore, plaintiff cannot be considered a traditional cable competitor to Comcast in those areas. The Court concludes that plaintiff's claims for damages resulting from plaintiff's inability to distribute cable television through traditional cable must be limited to the geographic area of Marco Island.

Plaintiff, however, argues that the geographic limitation to Marco Island is not appropriate for plaintiff's claims related to providing cable television through microwave technology. Plaintiff asserts that it provides cable television through microwave technology to a geographic area outside the boundaries of Marco Island, i.e., to a gated community on the Isles of Capri. While plaintiff does not hold a franchise agreement for areas located off of Marco Island, Plaintiff argues that cable television distribution through microwave technology is exempt from the federal and state cable franchising statutes. Plaintiff further claims that, in using this alternative method, plaintiff can offer

cable services without a franchise, is a competitor of Comcast throughout Collier County, and thus, has established antitrust standing for its claims for the areas located beyond the geographic boundaries of Marco Island.  Defendant does not address this argument in either its Motion for Partial Summary Judgment or its Reply.

The regulation of microwave technology to distribute cable programming remains the province of the federal government, in particular, the Federal Communications Commission (FCC), and is not within the authority of the state governments. See New York State Comm'n on Cable Television v. Federal Communications Comm'n, 749 F.2d 804, 806 (D.C. Cir. 1984).  "The FCC has allowed state and local governments some regulatory control over the franchising of 'traditional cable' – cable systems that use public rights-of-way and telephone lines to distribute programming." Id.  From the mid-1970s to the mid-1980s, "marketing innovations and advances in satellite and microwave technology have eliminated the need for the use of public rights-of-way to distribute 'cable' viewing to some subscribers."  Id.  In the late 1970s, "however, the [FCC] preempted state entry regulation of [microwave technology]...." Id. (citing Orth-O-Vision, Inc., 69 F.C.C.2d 657 (1978) and New York State Comm'n on Cable Television v. Federal Communications Comm'n, 669 F.2d 58 (2d Cir. 1982)).

The pertinent provision of the Florida statute regulating cable franchises comports with the preemption of microwave technology from state and local regulation. In defining the term "cable system", the Florida statute exempts cable systems which do not use public rights-of-way for distribution of cable television. A cable system using microwave technology has no need for public rights-of-way to bring cable programming to consumers. See New York State Comm'n on Cable Television, 749 F.2d at 810 ("[Microwave technology] is different from franchised cable in one critical respect: it is operated solely on private property and makes no use of public rights-of-way."). As such, Florida's statute governing cable franchises does not apply to cable providers who distribute cable television using microwave technology. Similarly, the federal statutory counterpart also has language which exempts microwave technology from the franchising requirements of the Cable Act.

The Court finds that plaintiff's claims based on cable television distribution through microwave technology are not limited to the geographic boundaries of Marco Island. It is undisputed that plaintiff provides cable programming using microwave technology to an area located off of Marco Island without a franchise from Collier County. The area of microwave technology, however, is not entirely unregulated. To provide cable television through microwave technology, an FCC license is required. See Home

Box Office, Inc. v. Advanced Consumer Tech., Movie Antenna, Inc., 549 F. Supp. 14, 15 (D.C.N.Y. 1981).  Defendant, however, provides no evidence that plaintiff lacks an FCC license.  Because the Court is required to draw reasonable inferences in favor of the non-movant, the Court concludes that (1) a cable provider without a franchise may offer cable services using microwave technology to consumers in Collier County, and (2) based on the record thus far, plaintiff is such a cable provider.  Therefore, to the extent that plaintiff's claims include the distribution of cable television through traditional cable in the geographic areas outside the boundaries of Marco Island, the Court will grant defendant's Motion for Partial Summary Judgment.  The Motion will otherwise be denied as it may relate to microwave technology.

Accordingly, it is now

**ORDERED**:

1. Defendant Comcast's Request for Oral Argument (Doc. # 122) is **DENIED**.

2. Plaintiff's Request that the Court Strike Comcast's Reply as Improper (Doc. #123) is **DENIED**.

3. Plaintiff's Request that the Court Permit MIC an Opportunity to File Sur-Reply (Doc. #123) is **DENIED**.

4. Defendant Comcast's Dispositive Motion for Partial Summary Judgment as to Plaintiff Marco Island Cable's Inability to

Offer Cable Services Outside Marco Island (Doc. #97) is **GRANTED in part and DENIED in part** as discussed above.

**DONE AND ORDERED** at Fort Myers, Florida, this __2nd__ day of February, 2006.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record