UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARCO ISLAND CABLE, INC., a Florida
corporation,

        Plaintiff,

vs.                         Case No.  2:04-cv-26-FtM-29DNF

COMCAST CABLEVISION OF THE SOUTH,
INC., a Colorado corporation,

        Defendant.

_____

**<u>OPINION AND ORDER</u>**

_____This matter comes before the Court on three motions for partial summary judgment filed by defendant Comcast Cablevision of the South, Inc. (defendant or Comcast).  (Docs. #222, 241, 242.) Plaintiff Marco Island Cable, Inc. (plaintiff or Marco Island Cable) filed its Responses.  (Docs. #231, 280.)  The Court has also allowed various Replies and Sur-Replies (Docs. #354, 356.) Additionally, the parties filed several affidavits, expert reports, deposition testimony, and other exhibits in support of their respective positions, all of which have been considered by the Court.  The Court heard oral arguments on June 12, 2006.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N.Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

-2-

## II.

The Court adopts without repeating the summary judgment facts set forth in its February 2, 2006 Opinion and Order. (Doc. #193, pp. 4-7.)   To summarize as it relates to the current motions, plaintiff provides cable television services in the geographic area of Marco Island, Florida pursuant to non-exclusive franchise agreements.   Plaintiff also provided cable television service by way of microwave technology to an apartment complex on the Isles of Capri in Collier County, Florida pursuant to its Federal Communications Commission (FCC) point-to-point microwave license. Since the inception of this lawsuit, plaintiff has allowed this license to lapse.   Plaintiff has no other franchise agreements or FCC licenses to provide cable television services.

Defendant Comcast is a competing cable provider and has non-exclusive franchise agreements to provide cable services throughout Collier County, including Marco Island.   Comcast began the operations relevant to this case in July, 2001.   Defendant also entered into exclusivity contracts with various multiple-dwelling units[1] (MDUs) in Collier County.   Such agreements provided that the cable-related wiring in residential buildings would be used exclusively by defendant for a set period of years.

---

[1]A multiple dwelling unit is defined as "an apartment building, condominium building, or cooperative."   47 C.F.R. § 76.800(a).

-3-

Additional facts will be set forth below as needed to address the specific motions.

### III.

Plaintiff contends that defendant has a virtual monopoly on cable services for the vast majority of Collier County, and that defendant protects its monopoly power through (1) predatory pricing; (2) long-term exclusive contracts with residents, associations or developers designed to prevent homeowners and condominium owners from choosing their own cable provider; (3) intimidation; (4) threats to remove cable wiring; and (5) threats to sue customers if they choose to get cable television from Marco Island Cable. (Doc. #2, ¶¶ 1, 26.) Plaintiff claims that defendant's actions are unlawful and have prevented it from offering cable television in certain parts of Collier County.

The three-count Complaint (Doc. #2) alleges state-law causes of action. Count I alleges violations of Florida's Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.211 (the "FDUTPA"). Specifically, plaintiff alleges unfair and deceptive trade practices of compensating developers for entering into exclusive contracts to bind future condominium and homeowners to Comcast, threats and litigation to enforce exclusive contracts, discriminatory and predatory pricing, and threats to remove cable wiring. (Doc. #2, ¶¶ 26-27.) Count II seeks a declaratory judgment pursuant to FLA. STAT. §§ 86.011 *et seq*. declaring that all

exclusive contracts for providing cable services to residents of Collier County entered into by Comcast are null and void as violations of FLA. STAT. § 542.18 and § 718.1232.  Count III alleges violations of Florida's Antitrust Statute, FLA. STAT. § 542.19 (the "FAA"), because of the use of exclusive contracts and predatory pricing.

In a February 2, 2006, Opinion and Order (Doc. #193), the Court granted partial summary judgment to defendant and geographically limited plaintiff's "traditional cable"-based claims to Marco Island.  The Court held that because a franchise was required for a cable operator to provide cable services through traditional cable throughout Collier County, and plaintiff's franchise agreement was limited to the geographic boundary of Marco Island, plaintiff did not have standing to assert any claims relating to areas beyond Marco Island.  The Court denied the partial summary judgment motion, however, as to plaintiff's claims relating to cable distribution through microwave technology (point-to-point service method) because defendant had not shown (or asserted) that plaintiff lacked a Federal Communications Commission (FCC) license to provide cable services through microwave technology.  In a March 1, 2006 Opinion and Order, the Court held that this case does not involve satellite master antenna television (SMATV)-based claims.  (Doc. #221, p. 2.)

## IV.

The first of defendant's motions for partial summary judgment relates to plaintiff's provision of cable television service through microwave technology to geographic areas other than Marco Island and the specific geographic coordinates on the Isle of Capri set forth in the FCC microwave license issued to Marco Island Cable. Defendant asserts that: (1) providing cable television service through microwave technology requires a FCC license for the geographic area or for a specific location to be serviced; (2) Marco Island Cable had a single such FCC license, and this was only for a building known as La Peninsula on the Isle of Capri; and (3) Marco Island Cable has not applied for or received any FCC license for any other location in Collier County. Because of this, defendant argues, plaintiff cannot establish causation and antitrust standing for locations other than on Marco Island.

The Court adopts its discussion of the antitrust standing requirement contained in its February 2, 2006 Opinion and Order. (Doc. #193, pp. 7-9.) More generally, in order to establish standing, a plaintiff must establish three elements: (1) that it has suffered an "injury-in-fact;" (2) a causal connection between the asserted injury-in-fact and the challenged conduct of the defendant; and (3) that the injury likely will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). These requirements are the "irreducible minimum" required by the Constitution for a plaintiff to proceed in federal

court.  Vermont Agency of Natural Res. v. United States, 529 U.S. 765, 771 (2000); Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 664 (1993).  In addition, "[a] plaintiff has standing to seek declaratory or injunctive relief only when he alleges facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Bowen v. First Family Fin. Servs., Inc., 233 F.3d 1331, 1340 (11th Cir. 2000)(quotation and citations omitted).

The Court concludes that a FCC license is required to provide either wide-area cable television service or point-to-point cable television service by microwave technology. See Home Box Office, Inc. v. Advanced Consumer Tech., Movie Antenna, Inc., 549 F. Supp. 14, 15 (D.C.N.Y. 1981).  It is factually undisputed that for Collier County outside of Marco Island, Marco Island Cable had only a single FCC license (for a building known as La Peninsula on the Isle of Capri) and that Marco Island Cable has not applied for or received any FCC license for any other location in Collier County. Plaintiff admits that it has allowed that FCC license to lapse since the inception of this litigation.  In the absence of a FCC license, plaintiff has no standing to assert claims regarding either wide-area cable television service or point-to-point cable television service by microwave technology for places outside of Marco Island, except for the La Peninsula location during the time its license was in effect.

-7-

Plaintiff argues, however, that microwave cable service can be provided in another way which does not require a license from the FCC, i.e., through satellite master antenna television (SMATV). Since a FCC license is not required for this type of microwave cable service, plaintiff asserts that its admitted lack of a FCC license cannot justify partial summary judgment as to satellite service. Plaintiff further asserts that its principal has already negotiated contracts with program suppliers and established relationships with equipment vendors to provide cable distribution through SMATV.

Plaintiff's argument fails in this case. The Court has already held that this case does not involve SMATV-based claims. (Doc. #221, p. 2 ("Moreover, the Complaint (Doc. #2) does not include claims involving Satellite Master Antenna Television.").) While SMATV does not require a FCC license, it may require a franchise depending upon the physical aspects of the system being utilized. See 47 U.S.C. § 522(7)(B)(definition of "cable system" excludes a facility that serves subscribers without using any public right-of-way). No fair reading of the Complaint could place defendant on notice that the claims included SMATV, and the Court declines to allow this case to expand to include SMATV at this late date in the proceedings.

Accordingly, defendant's Motion for Partial Summary Judgment As to Marco Island Company's Lack of FCC License to Offer Microwave-Based Cable Services Outside Marco Island (Doc. #222)

-8-

will be granted.   Summary judgment will be entered in favor of defendant on the claims involving microwave-based cable services outside of Marco Island other than to La Peninsula.

**V.**

Defendant's Motion for Partial Summary Judgment and Failure to Prosecute on Plaintiff's Predatory Pricing Claim (Doc. #241) contends that defendant is entitled to partial summary judgment as to plaintiff's predatory pricing claims because the record is devoid of any evidence of predatory pricing.   Alternatively, defendant argues that the claim should be dismissed due to plaintiff's failure to prosecute.

Plaintiff responds that "the focus of the litigation and the discovery has shifted to Comcast's other forms of predatory conduct, particularly its treatment of inside wiring, and away from predatory pricing. As a result, MIC cannot at this time state with confidence either that Comcast is engaging in predatory pricing or that it is not." (Doc. S-9, p. 31.)  Plaintiff further states that "MIC urges the Court to defer consideration of Comcast's motion on predatory pricing." (Id.)

The Court is not inclined to delay ruling on the merits of the predatory pricing claim.   It is already the eve of trial.   This case was initiated in federal court on January 16, 2004.   The Court granted multiple extensions of time for various deadlines, including discovery deadlines.   On November 4, 2005, plaintiff moved to compel discovery related to defendant's conduct beyond the

-9-

geographic area of Marco Island.  On December 9, 2005, the Court denied without prejudice the motion to compel discovery pending the outcome of defendant's first motion for partial summary judgment. (Doc. #150, p. 3.)  In that same order, the Court also extended the discovery deadline from February 3, 2006, to March 3, 2006.  (Id.) On February 2, 2006, the Court granted in part defendant's partial summary judgment motion, and ruled that plaintiff's traditional cable based claims were limited to the geographic area of Marco Island.  While plaintiff requested leave for another extension of the discovery deadline on February 24, 2006, plaintiff neither provided a justifiable reason for its failure to take the purported limited discovery on the microwave based claims nor moved to compel discovery related to those claims during the already extended discovery period.  The Court finds plaintiff had ample time to conduct discovery, including the opportunity to seek relief for the discovery to which plaintiff claimed entitlement.  The Court will neither prolong nor defer ruling on the matter.

The Supreme Court defined predatory pricing "as pricing below an appropriate measure of cost for the purpose of eliminating competition in the short run and reducing competition in the long run."  Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 118 (1986).  The Eleventh Circuit holds that "when an antitrust defendant moves for judgment as a matter of law, the test for predatory pricing must consider subjective evidence and should use average total cost as the cost above which no inference of

predatory intent can be made." <u>McGahee v. Northern Propane Gas Co.</u>, 858 F.2d 1487, 1496 (11th Cir. 1988).  The test for predatory pricing in this Circuit is as follows:

> If a defendant's prices were above average total cost then there is no predatory pricing and thus no circumstantial evidence of predatory intent.  Average total cost means the average of the total economic cost, which includes the necessary minimum profit.
>
> . . .
>
> If a defendant's prices were below average total cost and above short run marginal cost, then there is circumstantial evidence of predatory intent.  An inference of predatory intent, however, may not rest solely on prices of this nature.  To withstand judgment as a matter of law, a plaintiff must have other evidence either objective or subjective of predatory intent.
>
> . . .
>
> If a defendant's prices were below short run marginal cost, then the circumstantial evidence is strong enough to create a rebuttable presumption of predatory intent. . . .  If a defendant's prices were below short run marginal cost and the other evidence, subjective or objective, is sufficiently probative of defendant's predatory intent, then as a matter of law defendant has the predatory intent required to establish the attempt to monopolize element of a Sherman Act claim . . . .

<u>McGahee</u>, 858 F.2d at 1503-04.

The Court agrees with defendant that there is no evidence of predatory pricing in this case.  It is undisputed that defendant's prices are not below cost.  Furthermore, after a lengthy period available for discovery, plaintiff concedes that it does not know if predatory pricing exists.  The Court finds that there is no record evidence supporting plaintiff's claims of predatory pricing.  Accordingly, Defendant's Dispositive Motion for Partial Summary

Judgment on Plaintiff's Predatory Pricing Claim will be granted. Summary judgment will be entered in favor of defendant on the predatory pricing claims contained in each of the three counts (Paragraphs 1, 23, 26, 33, 42-45).  The motion based upon a failure to prosecute will be denied as moot.

**VI.**

Having limited the geographic area for which plaintiff may assert claims, and eliminated the predatory pricing claims for lack of evidence, the Court now addresses defendant's final partial summary judgment motion.   Defendant's Dispositive Motion for Partial Summary Judgment on All Claims Concerning Its Exclusivity Arrangements (Doc. #242) seeks a judgment on most of the remaining claims set forth in the Complaint.

**A.   Count I: Florida Deceptive and Unfair Trade Practices Act**

In Count I of the Complaint, plaintiff alleges that defendant's conduct constitutes deceptive and unfair trade practices under the FDUPTA.  The remaining allegations (i.e., other than predatory pricing) relate to defendant's practices of entering into and compensating developers for entering into exclusive contracts by which defendant would provide cable services, making threats and engaging in litigation to enforce the exclusive contracts, and threatening removal of cable wiring in the multiple dwelling units in the event that the subscriber chooses to use

another cable service.  Defendant asserts that summary judgment is required as to all such allegations.

The FDUTPA declares "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful. FLA. STAT. § 501.204(1).  The FDUTPA creates a private cause of action for declaratory and injunctive relief for "anyone aggrieved by a violation of this part," FLA. STAT. § 501.211(1), and (as of July 1, 2001) a private cause of action for actual damages, attorney fees and court costs for "a person who has suffered a loss as a result of a violation of this part." FLA. STAT. § 501.211(2).[2] A "violation of this part" means any violation of the FDUTPA or rules adopted under it, and (as of July 1, 2001) may be based upon "(a) Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. s. 41 et seq.; (b) The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts; (c) Any law, statute, rule, regulation or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." FLA. STAT. § 501.203(3).  Antitrust violations are included within the conduct proscribed by the FDUPTA, Mack v. Bristol-Myers Squibb Co., 673 So. 2d 100, 103-04 (Fla. 1st DCA 1996), and both Florida and federal antitrust law are analyzed under the same rules and case law.

---

[2]Prior to the 2001 amendment, this cause of action was limited to "consumers."

Andrx Pharm., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1233 n.5 (11th Cir. 2005).   The FDUPTA is not limited to antitrust violations.

**(1) Exclusivity Contracts:**

The Complaint alleges that defendant entered into contracts with developers of condominiums and planned unit developments which provide defendant with the exclusive right to use the interior wiring, thus preventing the retail purchasers within the developments from being free to choose another cable provider.   The Complaint further asserts that such exclusivity contracts violate the antitrust law, and thus violate the FDUPTA.

Both parties agree that exclusivity contracts are not *per se* unlawful[3].   An exclusive dealing arrangement does not violate the antitrust laws "unless the court believes it probable that performance of the contract will foreclose competition in a substantial share of the line of commerce affected."   Tampa Elec. Co. v. Naille Coal Co., 365 U.S. 320, 327 (1961)(20 year exclusive contract not *per se* unlawful).   This requires determination of the line of commerce (i.e., the type of goods or services) involved, the area of effective competition in that line of commerce, and that the competition foreclosed constitutes a substantial share of the market, i.e., that the opportunities for others to enter into

---

[3]Plaintiff also utilizes contracts with its MDU customers which include exclusivity provisions, but characterizes its contracts as being qualitatively different.

or remain in the market are significantly limited. Id. at 327-329. See also Seafood Trading Corp. v. Jerrico, Inc., 924 F.2d 1555, 1567 (11th Cir. 1991)(a party may choose with whom he will do business or not do business, and such exclusive dealing will not give rise to liability absent of showing of actual competitive injury).   Defendant argues that since plaintiff cannot show substantially foreclosed competition in the relevant market, the exclusivity contracts do not constitute an unfair or deceptive trade practice.

Defendant first argues that plaintiff has produced no admissible evidence established the relevant market, which must be done through expert testimony, Bailey v. Allgas, Inc., 284 F.3d 1237, 1246 (11th Cir. 2002), and therefore has forfeited any claim that defendant has foreclosed competition in any relevant geographic market.   The relevant geographic market is the area of effective competition between the competitors for the available consumers.   Tampa Elec., Co., 365 U.S. at 327; American Key Corp. v. Cole Nat'l Corp., 762 F.2d 1569, 1581 (11th Cir. 1981).   As discussed at the pretrial conference, plaintiff's view of the relevant geographic market has indeed "morphed" over the course of this litigation.   Plaintiff's expert did not offer any opinion as to the relevant market, and plaintiff utilizes the testimony of defendant's expert to establish the relevant geographic market.   In the Joint Pretrial Stipulation (Doc. #299, p. 3), plaintiff identified two distinct relevant geographic markets: "(i) Marco

Island and (ii) the area on the mainland of Collier County in which Comcast has facilities and does business."

It cannot be disputed that Marco Island is a component of the relevant geographic market in this case.  The Court finds, however, that "the area on the mainland of Collier County in which Comcast has facilities and does business" is not part of the relevant geographic market because, with one exception[4], plaintiff has never been franchised or licensed to operate in this geographic market. Mainland Collier County cannot be an area of effective competition when plaintiff was never legally authorized to provide traditional or microwave cable services to that area.

As to Marco Island, defendant argues that competition has not been substantially foreclosed as to MDU customers because Marco Island Cable admittedly services approximately 80% of Marco Island's MDU customers.[5]  The Court agrees.  It is undisputed that plaintiff has 80% of the MDU market on Marco Island.  Since Comcast is not the only competitor on Marco Island, defendant has less than a 20% market share.  Defendant therefore cannot have monopolized the relevant Marco Island market or attempted to do so.  "A market share at or less than 50% is inadequate as a matter of law to constitute monopoly power."  <u>Bailey</u>, 284 F.3d at 1250.  A market

---

[4]The only mainland Collier County area within the relevant geographic market would be La Peninsula, but there is no claim that Comcast had an exclusive contract with that MDU.

[5]The exclusivity contracts only affect delivery of cable services to MDUs, not to single family homes.

share of approximately 20%, combined with the other undisputed facts in this case, establish no reasonable probability of defendant achieving monopoly power. See U.S. Anchor Mfg. Inc. v. Rule Indus., Inc., 7 F.3d 986, 999-1001 (11th Cir. 1993). Accordingly, the Court finds that the use of exclusivity contracts by Comcast in the relevant market (Marco Island) did not substantially foreclose competition, was not an antitrust violation, and did not constitute an unfair or deceptive trade practice under the FUDTPA.

Plaintiff argues, however, that its "essential facilities" theory satisfies the foreclosure of competition requirement. Plaintiff asserts that the wiring within an MDU is so essential to its ability to compete that the wiring must be shared with plaintiff despite the exclusivity provisions of defendant's contracts. Defendant responds that the essential facilities theory is not viable because it is not supported by binding precedent, it cannot factually apply when plaintiff has 80% of the Marco Island business, and the overwhelming evidence shows that "pre-wiring" is not in fact essential to competition.

The Supreme Court has never recognized an essential facilities theory of liability in antitrust cases, although it has not repudiated such a theory either. Verizon Commc'ns, Inc. v. Law Offices of Curtis v. Trinko, LLP, 540 U.S. 398, 411 (2004). The Supreme Court did endorse, however, the view that an essential facilities claim is only viable where there is indeed

-17-

unavailability of access to essential facilities, and if a state or federal agency is authorized to compel access to a competitor's infrastructure, an essential facilities claim should be denied. Trinko, 540 U.S. at 411; Covad Commc'ns Co. v. BellSouth Corp., 374 F.3d 1044, 1050 (11th Cir. 2004), cert. denied, 544 U.S. 904 (2005). Given the broad remedial authority under the FDUTPA, FLA. STAT. § 501.207(3), an essential facilities claim is not tenable.

The Eleventh Circuit appears to otherwise retain the essential facilities theory of liability. Morris Commc'ns Corp. v. PGA Tour, Inc., 364 F.3d 1288, 1294 (11th Cir. 2004) stated: "Under the essential facility test, a company that has exclusive control over a facility essential to effective competition may not deny potential competitors access to that facility on reasonable terms and conditions if to do so would create or maintain monopoly power in the relevant market. . . . The plaintiff has the burden of proving that the defendant controls an essential facility that cannot be practically or economically duplicated." (Citations omitted).

It is undisputed that defendant has control over the internal cable wiring at some of the multiple dwelling units on Marco Island pursuant to the exclusivity contracts. There are material issues of disputed facts concerning whether the wiring is an essential facility that cannot be practically or economically duplicated. This theory cannot go to a jury, however, because the undisputed evidence establishes that defendant does not maintain monopoly

-18-

power in the relevant Marco Island market, and disallowing access to its wiring on Marco Island will not create monopoly power in defendant. The undisputed facts show defendant has only 20% of the cable customers on Marco Island and is not a monopolist in the relevant market. Apart from the antitrust context, there is no basis to find the exclusivity contracts to be an unfair or deceptive trade practice in this case. Thus, plaintiff cannot prevail on its exclusivity contracts FDUPTA claim based on the essential facilities doctrine.

**(2) Threats to Sue, Actual Litigation:**

The Complaint alleges that Comcast's litigation and threatened litigation to enforce its cable agreements were anticompetitive, and therefore violates the FDUPTA. Defendant invokes the Noerr-Pennington[6] immunity to preclude liability based upon litigation to enforce its contracts, writing letters threatening to sue, and attempting to negotiate a settlement in lieu of suit.

The Supreme Court has held that a defendant is immune from Sherman Act liability for concerted efforts to petition the government to pass legislation which has the effect of restraining or monopolizing trade in favor of the defendant.[7] "Subsequent

---

[6]Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 136 (1961); United Mine Workers v. Pennington, 381 U.S. 657, 670 (1965).

[7]Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 136 (1961) (granting antitrust immunity for publicity campaign designed to spur the adoption of monopoly-facilitating
(continued...)

precedent has extended <u>Noerr-Pennington</u> immunity to defendants who exercise their right to petition government by resorting to administrative and/or judicial proceedings." <u>Andrx Pharm.</u>, 421 F.3d at 1234. "Moreover, as the Supreme Court has noted, engaging in litigation to seek an anticompetitive outcome from a court is First Amendment activity that is immune from antitrust liability." <u>Andrx Pharm.</u>, 421 F.3d at 1234. The immunity also applies to threats of litigation. <u>McGuire Oil Co. v. Mapco, Inc.</u>, 958 F.2d 1552, 1559 (11th Cir. 1992).

An exception to the <u>Noerr-Pennington</u> doctrine exists, however, where the defendant engages in "sham litigation." <u>Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 56 (1993). To prevail on the sham litigation exception, a litigant must establish that: (1) "the lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) the party bringing the allegedly baseless suit did so with a "subjective motivation . . . to interfere <u>directly</u> with the business relationships of a competitor." <u>Id.</u> at 60-61 (emphasis in original). Construing the first prong, the Supreme Court noted that the existence of probable

---

[7](...continued)
legislation); <u>United Mine Workers v. Pennington</u>, 381 U.S. 657, 670 (1965) (noting that <u>Noerr</u> shielded a defendant from antitrust liability for "efforts to influence public officials . . . even though intended to eliminate competition").

cause to bring a lawsuit is sufficient to thwart a claim that litigation was objectively baseless.  See id. at 62.

In this case the evidence establishes that in 2002 defendant sued the Cozumel Condominium Association to prevent it from letting plaintiff use its inside wiring.  Plaintiff asserts that a state court judge dismissed the case without prejudice, finding that "the exclusivity provision in the contract attached to the first amended complaint violates Section 718.1232, Florida Statutes." (Doc. #S-9, p. 28.)  Plaintiff apparently quotes from and references to an order by the state court judge.  However, the only order in the record from that state court judge is a March 19, 2003, Agreed Order Approving Stipulation for Settlement, which was attached to the Complaint (Doc. #2, p. 25) which contains no such finding.  The Court finds that plaintiff's assertion concerning the state court ruling is not supported by the record because the Cozumel case was resolved with a settlement, and was not adjudicated on the merits. The Court finds no indication from the record that the suit was objectively baseless or that defendant was subjectively motivated to interfere directly in plaintiff's business relationships.  The Court therefore finds that the filing of this lawsuit and its settlement are immunized conduct, and plaintiff has not shown that the sham exception applies to the lawsuit or settlement.

The evidence also establishes that defendant has sent letters threatening to sue to enforce its exclusivity contracts.  For example, defendant demanded access onto the premises to remove the

wiring, "[o]therwise, Comcast will bring an action to enforce its rights . . . ." (Doc. #S-8, Exh. I, Hagen Letter to Adamski, July 15, 2002.) On August 4, 2004, defendant sent a similar letter to Eagles' Retreat Condominium Association, stating that in allowing plaintiff to use the exclusive wiring, the association materially breached its agreement with defendant. This letter further states that defendant would seek to enforce its rights under the contract. (Doc. #253-17.)

Plaintiff asserts that the threatening letters come within the sham exception because defendant knew it does not own the inside wiring, as it claims in the letters, yet has persisted in invoking the FCC's inside wiring rules in threatening MDUs with litigation if they allowed defendant's competitors to use the inside wiring. Plaintiff also asserts that the letters fall within the sham exception because they grossly inflate the amount the MDUs must pay in order to buyout defendant's "ownership" interest in the wiring.

Repeated threats of litigation as a method of creating or maintaining anti-competitive conduct is within the scope of the immunity, and does not fall within the sham exception. McGuire Oil Co., 958 F.2d at 1559-62. It is not unusual that the basis claimed to underlie the potential lawsuit is disputed, but such allegedly false representations to a putative defendant does not remove the immunity unless the elements of the sham exception are established.

Plaintiff has not submitted evidence which supports the sham litigation exception as to these letters.[8]

In this case, the Court finds the exception to the <u>Noerr-Pennington</u> immunity does not apply. Defendant's alleged misrepresentations are made to another private party who has the ability to challenge defendant's position before the court. Accordingly, because the <u>Noerr-Pennington</u> doctrine applies, and the sham litigation exception is inapplicable, the Court finds that defendant was immunized from antitrust liability for defendant's litigation-related conduct.

In sum, most of plaintiff's FDUPTA claims fail. The FDUPTA claim based on predatory pricing fails for lack of any evidence. The use of exclusive contracts was not a violation under FDUPTA in the only relevant market applicable to this case. If the essential facilities doctrine is valid, there is no evidence to establish that it applies in this case. <u>Noerr-Pennington</u> immunity shields defendant from liability for defendant's litigation-related conduct. Therefore, the Court concludes that defendant is entitled to summary judgment as to these components of Count I.

---

[8]The Eleventh Circuit has held that alleged misrepresentations to the government agency "acting judicially" in making a decision is are not entitled to <u>Noerr</u> immunity. <u>St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.</u>, 795 F.2d 948, 955 (11th Cir. 1986). The allegedly false statements in this case were not made to such a government agency or to the state court.

Not all of the FDUPTA claims contained in Count I have been the subject of summary judgment. The Complaint alleges that it was a violation of the FDUPTA for defendant to compensate developers for entering into the exclusive contracts. (Doc. #1, ¶¶ 22, 26). These "door fees" are independent from the issue of exclusivity in and of itself, and is properly the subject of Count I to the extent it relates to conduct on Marco Island. Additionally, there were letters relating to ownership of internal wiring which did not contain reference to litigation, and therefore would not be immune under <u>Noerr</u> but which might constitute a violation of FDUPTA. (E.g., Doc. #S-6, Exhibits J, L). Ownership, removal, and threats of removal of inside wiring in MDUs on Marco Island (other than when coupled with a threatened or actual lawsuit) may be a proper basis for the FDUPTA claim in Count I.

**B. Count II: Declaratory Judgment that Exclusivity Contracts Void**

In Count II, plaintiff asks that the Court declare that defendant's exclusive contracts violate FLA. STAT. § 718.1232, and therefore, are void and unenforceable. Defendant argues that there is no basis to declare its contracts unenforceable under Fla. Stat. § 718.1232 because its contracts do not proscribe individual residents from contracting with plaintiff or other cable providers.

Section 718.1232 of the Florida Statutes governs a resident's right to access to cable television service without extra charge, and states as follows:

No resident of any condominium dwelling unit, whether tenant or owner, shall be denied access to any available franchised or licensed cable television service, nor shall such resident or cable television service be required to pay anything of value in order to obtain or provide such service except those charges normally paid for like services by residents of, or providers of such services to, single-family homes within the same franchised or licensed area and except for installation charges as such charges may be agreed to between such resident and the provider of such services.

Fla. Stat. § 718.1232. The specific provision in the subject contract governing the ownership and exclusivity is as follows:

The ownership of all parts of the Company System installed by the Company shall be and will remain the personal property of the Company. At no time during or after the term hereof shall the Owner or any third party have the right to use the Company System or any portion thereof for any purpose. The ownership of the Owner system shall be and will remain the property of the Owner. The Company shall not be liable in any manner whatsoever for maintenance or repair of the Owner System. . . . Owner hereby authorizes Company the exclusive right to utilize any and all portions of Owner system as needed to deliver the Services within and throughout the Premises.

(Doc. #S-9, Exh. 4, p. 2.) Plaintiff argues that defendant's exclusive right to the internal wiring is unlawful as effectively a prohibition on a subscriber's ability to deal with an alternative cable service provider.

Defendant responds that none of the contract provisions prohibit any resident from seeking an alternative cable provider, and that the resident or the alternative cable provider may install a second set of internal wiring. However, at least one letter from Comcast asserted a "right to service the property exclusively on an individual basis until 2010 should [the MDU] decide not to continue

being billed on a bulk basis." (Doc. #S-6, Exhibit J). Thus, there are material issues of disputed facts which preclude summary judgment. The motion will therefore be denied as to Count II.

## C. Count III: Florida Antitrust Act

In Count III, plaintiff alleges that defendant's conduct, including the use of exclusive contracts for cable services and predatory pricing, constitute an illegal restraint of trade in violation of section 542.19 of the Florida Antitrust Act. The FAA provides that "[i]t is unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce in this state." FLA. STAT. § 542.19. Florida courts recognize that section 542.19 of the Florida Statutes is the counterpart to section 2 of the Sherman Act. St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc., 457 so. 2d 1028, 1032 (Fla. 2d DCA 1984). Thus, analysis under the FAA will be the same analysis under section 2 of the Sherman Antitrust Act. For the reasons stated above, both the exclusive contract and the predatory pricing components of the antitrust claim has been resolved in favor of defendant. The Motion is therefore granted as to Count III.

Accordingly, it is now

**ORDERED**:

1. Defendant Comcast of the South, Inc.'s Dispositive Motion for Partial Summary Judgment as to Plaintiff Marco Island Cable's

Lack of an FCC License to Offer Microwave-Based Cable Services Outside Marco Island (Doc. #222) is **GRANTED.**

2.  Defendant Comcast of the South, Inc.'s Dispositive Motion for Partial Summary Judgment on Plaintiff's Predatory Pricing Claim (Doc. #241) is **GRANTED.**

3.  Defendant Comcast of the South, Inc.'s Dispositive Motion for Failure to Prosecute on Plaintiff's Predatory Pricing Claim (Doc. #241) is **DENIED** as moot.

4.  Defendant Comcast of the South, Inc.'s Dispositive Motion for Partial Summary Judgment on All Claims Concerning Its Exclusivity Arrangements (Doc. #242) is **GRANTED** as set forth above as to Counts I and III, and is **DENIED** as to Count II.

5.  The Clerk of the Court shall withhold entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this __3rd__ day of July, 2006.


_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record